```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                       DISTRICT OF VERMONT


Francis Joseph,                  :
        Plaintiff,               :
                                 :
     v.                          :     File No. 1:08-CV-11
                                 :
Robert Hofmann, Randall          :
Stovall, Corrections             :
Corporation of America,          :
John Ferguson, Vermont           :
Department of Corrections,       :
Garner Dunn, Greg Barrett,       :
Bessie Hughes, Officer           :
Bingham, John and Jane           :
Does,                            
        Defendants.              :
```

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Paper 15)

*Pro se* plaintiff Francis Joseph, a Vermont inmate incarcerated in Kentucky, brings this action claiming that he was abused and retaliated against while in the care of the Kentucky facility.  The defendants have moved to dismiss on the basis of sovereign immunity and improper venue.  Joseph has not responded to the motion.  For the reasons set forth below, I recommend that the claims against defendants Hofmann and the Vermont Department of Corrections be DISMISSED, and that the remainder of the case be TRANSFERRED to the United States District Court for the Eastern District of Kentucky.

Factual Background

For purposes of the pending motion to dismiss, the facts alleged in the complaint will be accepted as true. While incarcerated at the Lee Adjustment Center in Beattyville, Kentucky, Joseph suddenly lost consciousness and fell down. When prison guards tried to assist him, he was unable to stand up and could not feel his hands and feet. An ambulance was called, and Joseph was transported to a local hospital where he was diagnosed with double pneumonia. He was admitted to the hospital, and according to the complaint, slept for "an unknown period of days because of[] the critical condition he was in." (Paper 5 at 6).

When Joseph awoke from his sleep, he found that he was handcuffed to the bed and was being guarded by two prison guards. He subsequently had a disagreement with the guards about the television program he wanted to watch. As a result of this disagreement, Officer Garner Dunn[1] allegedly became angry and abusive, insulting Joseph and "trying to stuff the remote in the petitioner's face." Id. at 8. At

---

[1] Although the complaint identifies this defendant as "Gardener Dunn," the defendants report that the guard's first name is "Garner." (Paper 15 at 1).

that time, Joseph was "still very sick and couldn't even move his hands; his extremities were still like dead weight." Id. Dunn next proceeded to take out his gun and, "while screaming and swearing at the petitioner," placed the gun "directly between the petitioner's eyes." Id. at 9. Joseph was frightened, and at first said nothing. He eventually begged for his life and conceded that Dunn could have the television remote. Hearing this, Dunn holstered his weapon and instructed Joseph not to speak to hospital staff. Defendant Greg Barrett, the other guard in the room, did nothing to assist Joseph during this incident.

Joseph was later asked by one of the hospital nurses to urinate in a container. After filling the container half way, Joseph left the room to go for a walk with the nurse. When they returned, there was only a small bit of urine in the container. Officers Barrett and Dunn were in the room at that time. Joseph alleges that "[w]hen it became time for the petitioner to go to sleep officer Dunn pulled back the covers of the hospital bed, there was a very strong aroma of urine (ammonia smell) coming off the bedding." Id. at 11 (emphasis in original). Despite Joseph's protests, Officer Dunn ordered him to sleep in the bed with the soiled

sheets.

Throughout the night, Officers Dunn and Barrett would allegedly kick the bed just as Joseph was falling asleep. When he woke up the next morning, he was covered with a red rash as a result of sleeping in urine-soaked sheets. Later that day, Joseph informed a nurse about the abuse he was suffering. That afternoon and evening, Dunn and Barrett continued to kick the bed when Joseph was trying to sleep.

The following morning "a gray haired women [sic] in civilian clothes" entered the room and asked the guards if they had held a gun to Joseph's head, put urine in his bed, or interfered with his sleep by kicking the bed. Id. at 4. Dunn and Barrett denied the accusations, insisting that Joseph was a liar. The woman then took pictures of the room, including brownish-black scuff marks on the bed. Shortly thereafter, Joseph was returned to the Lee Adjustment Center.

Upon his return to prison, Joseph was able to talk to a State of Vermont employee about his experience at the hospital. The employee reportedly "took the petitioner very seriously and had him sent back to Vermont very shortly after the petitioner had gotten out of the hospital." Id.

at 15.  When he arrived in Vermont, Joseph was still quite sick and was placed in the medical ward of a prison in Springfield.

Once Joseph returned to full health he was again transferred to a Kentucky prison.  When he arrived there he received a job in the facility's kitchen.  After a few days working in the kitchen, he was approached by Captain Besse Hughes who informed him that she was "involved in that hospital fiasco."  Hughes then spoke with Joseph's boss, and Joseph was fired from his job.  Joseph has not been able to secure other work at the facility.

## Discussion

### I. Motion to Dismiss Standard

On a motion to dismiss, the Court must accept as true the factual allegations in the complaint, and must draw all inferences in the plaintiff's favor.  See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006).  To survive dismissal, a complaint must plead enough facts to be plausible on its face.  Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)).  If a plaintiff is proceeding *pro se*, courts are to construe the complaint and

other pleadings liberally.  See, e.g., Williams v. Edwards, 195 F.3d 95, 96 (2d Cir. 1999).

II.  Vermont Defendants

   A.  Official Capacity

   The movants argue that Joseph's constitutional claims for damages against Vermont Department of Corrections ("DOC") Commissioner Robert Hofmann, in his official capacity, and the DOC itself are barred by the Eleventh Amendment.  Hofmann and the DOC are the only Vermont defendants in the case.

   The Eleventh Amendment prohibits suits in federal court by citizens against a state and its agencies, absent a waiver of immunity and consent to suit by the state or a valid abrogation of constitutional immunity by Congress.  See, e.g., Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 142-47 (1993); Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89, 97-100 (1984).  The Eleventh Amendment also bars claims against state employees sued in their official capacities.  See Hafer v. Melo, 502 U.S. 21, 25 (1991); Pennhurst, 465 U.S. at 102.

   Relevant to this case, there has been no waiver of Vermont's sovereign immunity and no abrogation of that

immunity by Congress.  Indeed, the Vermont legislature has specifically preserved the State's immunity under the Eleventh Amendment.  See 12 V.S.A. § 5601(g).  Accordingly, any claim against the DOC, and any action for damages brought against Hofmann in his official capacity, should be DISMISSED.[2]

B.  Individual Capacity

With respect to Joseph's claims against Hofmann in his individual capacity, he submits that Hofmann had a duty to properly monitor and supervise CCA employees.  Accordingly, it is clear that Hofmann is being sued in his capacity as a supervisor.  The Second Circuit has established that, for a supervisory defendant to be held liable under § 1983, the claim cannot rest on respondeat superior.

> '[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior.'  Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) (citing Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989)).  To establish the liability of a supervisory official under § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional violations.  See Green v. Bauvi, 46 F.3d 189, 194 (2d Cir. 1995).  By the same token, however, mere 'linkage in the prison chain of command' is

---

[2] The defendants do not address Joseph's claims for declaratory and injunctive relief against Hofmann in his official capacity.  Consequently, the Court need not address these issues.

7

> insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim. Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985); see also Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (noting that a defendant in a § 1983 action may not be held liable for constitutional violations merely because he held a high position of authority).
>
> Supervisor liability under § 1983 "can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring." Hernandez, 341 F.3d at 145; see also Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003).

Here, there are no allegations of direct participation by Commissioner Hofmann. Nor is there any indication that Hofmann was aware of Joseph's alleged abuse, was responsible for a policy or custom that led to wrongdoing, or that Hofmann may be held liable for failing to properly supervise CCA employees who committed allegedly wrongful acts. Joseph's primary claim is that he was abused by CCA employees while confined in a Kentucky hospital. When he relayed his story to a Vermont state employee, he was

immediately moved back to Vermont until he was fully recovered.  The Court sees no basis for holding Commissioner Hofmann liable under these facts, and the individual capacity claims against him should be DISMISSED.

II.   <u>Motion to Dismiss for Improper Venue</u>

The defendants argue that, with respect to the remaining defendants, venue in Vermont is improper.  When a case is commenced in an improper venue, Section 1406(a) requires the Court to either dismiss it or, "if it be in the interest of justice," transfer the case to a district in which it could have been brought.  28 U.S.C. § 1406(a). "Whether dismissal or transfer is appropriate lies within the sound discretion of the district court."  <u>Minnette v. Time Warner</u>, 997 F.2d 1023, 1026 (2d Cir. 1993).  "On a Rule 12(b)(3) motion to dismiss based on improper venue, the burden of showing that venue in the forum is proper falls on the plaintiff."  <u>Indymac Mortgage Holdings, Inc. v. Reyad</u>, 167 F. Supp. 2d 222, 237 (D. Conn. 2001).

In cases involving questions of federal law, such as civil rights claims under § 1983, venue lies in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving

>rise to the claim occurred, or a substantial part
>of property that is the subject of the action is
>situated, or (3) a judicial district in which any
>defendant may be found, if there is no district in
>which the action may otherwise be brought.

28 U.S.C. § 1391(b); see also Amaker v. Haponik, 198 F.R.D. 386, 391 (S.D.N.Y. 2000). Joseph also claims diversity jurisdiction, for which the controlling statute is 28 U.S.C. § 1391(a). Section 1391(a) provides that venue lies in

>(1) a judicial district where any defendant
>resides, if all defendants reside in the same
>State, (2) a judicial district in which a
>substantial part of the events or omissions giving
>rise to the claim occurred, or a substantial part
>of property that is the subject of the action is
>situated, or (3) a judicial district in which any
>defendant is subject to personal jurisdiction at
>the time the action is commenced, if there is no
>district in which the action may otherwise be
>brought.

28 U.S.C. § 1391(a).

Subsection (1) of either § 1391(a) or § 1391(b) does not apply here, since the defendants do not all reside in the same district. Although the primary actors in the case presumably reside in Kentucky, Corrections Corporation of America is headquartered in Tennessee. See Stutes v. Tipton, 540 F. Supp. 2d 516, 518 (D. Vt. 2008). Claims also remain against Commissioner Hofmann in his official capacity. See supra, footnote 2.

The next subsection of each statute determines venue based upon where "a substantial part of the events or omissions giving rise to the events occurred . . . ." 28 U.S.C. § 1391(a)(2), (b)(2).  The Second Circuit has instructed lower courts to "take seriously the adjective 'substantial'" in construing "the venue statute strictly." Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 356 (2d Cir. 2005).  In this case, the principal events took place at the hospital in Kentucky.  Accordingly, venue is most appropriate in that state under subsection (2).  See Lee v. Corrections Corp. of America, 2007 WL 4225405, at *2-*3 (D. Hawaii Nov. 26, 2007); Basargin v. Corrections Corp. of America, 2005 WL 2705002, at *2 (D. Alaska Oct. 17, 2005); Sadler v. Rowland, 2004 WL 2061127, at *5 (D. Conn. Sept. 13, 2004) (action brought by Connecticut prisoner against prison personnel in Virginia transferred to Virginia). Because this action could have been brought in Kentucky, subsection (3) of both §§ 1391(a) and (b) is inapplicable. See Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 2d § 3802.1 n. 26 (Supp. 2003) (citing F.S. Photo, Inc. v. Picturevision, Inc., 48 F. Supp. 2d 442, 448 (D. Del. 1999)).

Having determined that venue is most appropriate in Kentucky, the Court must decide whether the case should be dismissed, or whether the interests of justice call for a transfer. "Courts enjoy considerable discretion in deciding whether to transfer a case in the interest of justice." Daniel v. American Bd. of Emergency Medicine, 428 F.3d 408, 435 (2d Cir. 2005) (citation omitted). In making this determination, consideration should be given to the ultimate goal of the "expeditious and orderly adjudication of cases and controversies on their merits." Goldlawr, Inc. v. Heinman, 369 U.S. 463, 466-67 (1962).

Joseph commenced this action several months ago. Because of his *in forma pauperis* status, service has been initiated by the U.S. Marshals Service. To dismiss the case and require re-filing in Kentucky would result in unnecessary duplication of effort on the part of the government, additional effort for the plaintiff, added expense for the defendants, and unnecessary delay for all parties. I therefore recommend that, in the interest of justice, the case be TRANSFERRED to Kentucky.

## Conclusion

For the reasons set forth above, I recommend that the

defendants' motion to dismiss be GRANTED with respect to all claims against the Vermont Department of Corrections, all claims for damages against Robert Hofmann in his official capacity, and all claims against Hofmann in his individual capacity.  I further recommend that the remainder of the case be TRANSFERRED to the United States District Court for the Eastern District of Kentucky pursuant to 28 U.S.C. § 1406.

   Dated at Burlington, in the District of Vermont, this 12th day of September, 2008.

>                              /s/ Jerome J. Niedermeier
>                              Jerome J. Niedermeier
>                              United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).